May it please the court, Brian Burgess on behalf of the appellant Robert Reynolds. In Rico County Code section 22-195 substantially limits speech within a traditional public forum, broadly restricting entire categories of protected First Amendment expression in every median throughout the entire county at all times. As the Supreme Court reiterated just last term in McClellan v. Coakley, the government's ability to restrict expression within a traditional public forum is, quote, very limited. Here, the ordinance fails First Amendment scrutiny for three reasons. First, it lacks an evidentiary basis because the county has not put forward any objective evidence of a traffic safety problem connected to the speech, much less evidence that could support a countywide restriction. Does it require evidence to state the obvious that folks in the middle of a median pose a traffic hazard? We don't agree that that is obvious. This court in Warren v. Fairfax County specifically recognized that medians are traditional public fora, that as long as they've been in existence, they've been used for expression, including for expression like fundraising. So the argument which the county relies heavily on is just that this forum is fundamentally incompatible with that speech. But we think that is just a backdoor way of arguing that this is not really a traditional public forum. And in fact, these sort of ordinances aren't, you know, some cities have them, many do not. And in many instances in which municipalities have adopted such ordinances, they've been struck down. We cite several cases in which they've been struck down as not being supported by evidence. In many instances in which they've been upheld, it's only been after full evidentiary development, not on the basis of mere common sense. I read most of those cases, though, that ordinances there were even broader. I recognize that you say this is too broad. But in most of those cases, the restrictions applied not only to the median, but to the size of the roads and the adjoining sidewalks. This is different, right? Because your client can solicit all he wants from the sidewalk, right? Two responses to that. One, we think that that question goes to the availability of adequate alternatives. And we think sidewalks is relevant to that. We think there's a disputed question as to whether sidewalks are going to be adequate for Mr. Reynolds. But that issue only comes up if the county satisfies the first two prongs of the test, which requires them to show that there is a substantial safety interest and requires them to show that this is a narrowly tailored solution to that safety problem. In addition, it's true that in some of the cases that the restrictions have applied to sidewalks. That's not true of all of them. That's not true of the Eastern District of New York, for example, Acorn v. New Orleans. It's not true of the City of Portland case that we cited in our reply. And in the cases in which it has involved sidewalks, for example, Redondo Beach, the Ninth Circuit decision, there's no evidence that that was the key distinguishing feature in the court's analysis. And there's a reason for that. It's because the court there did not decide on the basis of whether there were adequate alternatives. It decided based on whether the law was narrowly tailored. And it identified two reasons that are equally applicable in this context. The first was that the law was applied citywide without any evidence that there was a citywide problem. And I would note that Redondo Beach is a much smaller municipality of about six square miles in comparison to all of Henrico County. Second, they noted that the law was not narrowly tailored because there were less restrictive alternatives available that could have served the city's interest in traffic safety. Simply enforcing traffic obstruction laws, laws against jaywalking. That's equally true here. The county, to the extent that there is a real concern about people coming into the roads and obstructing traffic, we dispute that that is something that the county can prohibit. The question is whether they can also prohibit prophylactically people engaging in protected expression on the median throughout the entire county without any evidence that that causes a traffic safety problem. And it's clear on the face of the ordinance and based on the 2012 amendments to the ordinance that the law does not apply solely to actual physical interaction going out into the streets. Under the ordinance and under the amendment, which made clear that even sitting and engaging in expression was going to be far, it's illegal for Mr. Reynolds to sit peacefully and hold a sign simply saying homeless. In fact, he was previously prosecuted for such activity. And we think for the county to rely simply on common sense, on an assertion that that sort of speech necessarily is going to cause a traffic disruption is inconsistent with the recognition that this is a traditional public forum. The recognition that this sort of speech, including what, again, including fundraising and newspaper criers, which is what the court noted in Warren v. Fairfax County, has long been engaged in on the medians. And if the county thinks, well, this is causing a problem, we don't think it can be accomplished with enforcing just laws against traffic obstruction, we submit that it needs to come forward with evidence. That's what intermediate scrutiny requires. What about the evidence from the chief of police, somebody presumably with experience in traffic problems and hazards? I mean, this wasn't entirely based on, it's obvious, there was in fact specific testimony from the chief of police. His testimony was that, based on his observations, this seemed dangerous to him. And we think that sort of conclusory assertion by a government official, even if well-meaning and even if he believed it, can't be enough to satisfy the government's burden under intermediate scrutiny. There's no indication of traffic patterns that he discussed throughout the county. There's no even indication of what his observations were. Does the county have to wait until somebody's actually killed or maimed on the median? No, of course not. That's not our position. There's lots of different sorts of evidence that might be relevant to demonstrate that there's a traffic safety problem. Accident reports would certainly be one, but it's not exclusive. Other incident reports, near misses are just examples of dangerous activity on the medians. Traffic safety, or evidence regarding the traffic patterns in the county and explaining why in particular areas there was real congestion problems that were being caused by this speech, evidence with respect to the particular medians and why, you know, the actual conditions of that. It seems to me that, I obviously can't predict it, but it would seem to me that it would be likely that the county would be able to make such a showing with respect to the particular medians where your client would be most interested in flying his trade. I mean, clearly he wouldn't be interested in standing at the end of a cul-de-sac or a dead-end traffic roadway and soliciting. So I don't know that the fact that the ordinance is that broad that it eliminates panhandling in those areas is particularly compelling, at least from your point of view. Well, my client has specifically indicated that he engages in solicitation throughout the county. That's on pages 8 and 18. Single opportunity solicitation. That's correct. Those are his allegations, which he made in declarations that were signed under penalty of perjury. And so if the county's argument is, oh, we don't think your speech would be worthwhile in those instances, I just don't think that that can be an adequate basis for the government to support an overly expansive restriction on speech. Would the ordinance prohibit him from just being in the median holding a sign up? It would prohibit him from being in a median holding up certain signs if it said, hungry, homeless, please help. I think it's clear. What about hungry, homeless, without the please help? Would that be prohibited? I think it likely would. It would be a question of whether that would constitute solicitation. Does that constitute a solicitation? I think if the implication were that by... Can you cut it that rough under the First Amendment? An implication of solicitation can be prohibited? Well, I think that would be a question to ask the county. We had a guy in Baltimore who for years became very famous standing outside the offices of the Baltimore Sun, who apparently had written an article about him many years ago. And this guy was just famous. And he just stood on the corner holding this sign that said, Baltimore Sun Lies. Could that kind of behavior be conducted here under this ordinance? It simply said Sun Lies, Baltimore Sun Lies. Well, let's modify it. You know, Commissioner X. There's a median outside the government center, right? Commissioner X lies. Or Commissioner X does whatever. Would that be prohibited? No, that would be permissible under the ordinance, which I think goes to demonstrate the fundamental under-inclusiveness of this ordinance, which is also relevant to narrow tailoring. So this ordinance really doesn't keep people off the median? No, we haven't argued that it keeps all people off the median for all purposes. We're arguing that it prohibits broad categories of protected expression from the median. So how is the traffic safety issue different, if at all, depending on what the person standing in the median is doing? We think it's not, and that's precisely our under-inclusiveness argument. If the county's argument is that someone simply being in the median with a sign is distracting, the county allows other people to stand with signs as long as they don't involve this specific speech. It allows commercial billboards that could certainly be distracting. And we think it raises a serious question of, if the county thinks this is always distracting, why are they singling out certain speech and certain speakers who tend to be unpopular speakers? Well, they say that they define it as transactional. Any speech that suggests or elicits or could reasonably be used to elicit a response from a motorist. That's right, but again, the ordinance is not restricted to physical interaction. It's quite clear that that's not the case. If the concern is about getting some sort of interaction with the motorist, there's plenty of speech that would not be prohibited under the ordinance that would have the same effect. We noted in our brief, for example, honk if you support the tea party. That's involving interaction and interchange between the person on the median and the motorist. And it's clear, and I don't think the county would dispute, that that would not be covered. And so, it's a question of, if the interest is just distraction, then we think this law is fundamentally under-inclusive and raises a real concern about pretext. In fact, as I understand the Apley's argument, it goes further than even what Judge Diaz suggested. They describe activities that require a transaction. And I don't see any evidence in the record, and I don't find any in my common sense, that says a person seeking donations requires a response from anybody. No, that's right. This ordinance applies just to the speech and the activity of sitting peacefully in the median, saying, you know, hungry homeless is help, or we'll work food. That doesn't necessarily require a response. It certainly doesn't require an immediate response. It could be, you know, we'll work for food. Meet me at the next parking lot. And we think that still would probably, under the plain terms of the ordinance, be restricted. And so, we don't think that there is a basis for just assuming that what this ordinance covers is necessarily going to cause a traffic safety problem. You know, it occurs to me that a driver reaching across a car to give a dollar to a person standing on the sidewalk, right? We're in America, not in the United Kingdom, so the steering wheels are on the left. Yeah, right. So, a driver would have to reach across the car if he or she wanted to actually make a donation. That could be more dangerous than a driver interacting, if he or she chose to, with a person standing on the median waiting to make a left turn. I think that's exactly right, Judge Davis. That was one of the reasons Mr. Reynolds provided for why sidewalks are not an adequate alternative, that he cannot realistically reach people. And if he did, it would be a much more dangerous situation. And we think it's suggestive of, you know, going to the county sort of, well, he can do it from the sidewalks, isn't that good enough? I think either that they're not really interested, they don't really have a concern about that physical interaction, or I think it's indicative that they don't believe that sort of speech is actually going to happen. And there's evidence in the record that supports that. When Chief Middleton was presenting this amendment to the ordinance before the Board of Supervisors, this is at pages 68 and 69 of the Joint Appendix, they discussed a program to enlist taxi drivers to get people away from the medians after they've been cited for this offense. Now, we don't take issue with the notion of humane enforcement, if that's what the county was trying to do, but we think it fundamentally demonstrates that no one believed that this was an ordinance that was moving people from one side of the road to the other. Everyone understood that— You don't need a taxi for that. I'm sorry? You don't need a taxi cab. You certainly don't need a taxi cab for that. Everyone understood that if this sort of solicitation was going to take place, if it was going to realistically be effective for a speaker like Mr. Reynolds, it was going to be the medians or nowhere else. If the court has no further questions, I'll save my remaining points for rebuttal. Okay, thank you. Newby. May it please the court, Andrew Newby on behalf of Douglas A. Middleton, Chief of Police of the County of Henrico, Virginia. The Chief of Police in the County of Henrico asked this court to affirm the district court's ruling holding the constitutionality of Henrico Code 22-195 for the reason that content-neutral time, place, or manner restriction that survives intermediate scrutiny because it's narrowly tailored to further the county's substantial interest, and this is key from what I've just heard, in traffic safety but also traffic flow. And it leaves open ample alternative channels for Mr. Reynolds and those like him to reach the same or very similar audience of motor vehicle occupants from the side and sidewalks of every road where the regulation does not reach and where their activities can continue without restriction. Without much success, apparently. That is the allegation, the complaint, Your Honor. Of course, there's no evidence to suggest that that is actually true, that there's no evidence, for instance, that he has tried to solicit on the side of the road and that it wasn't fruitful, for instance. There's nothing in the record to create a genuine dispute of the fact that it somehow won't be successful to solicit on the side of the roadway. And there's no reason to think it will be less successful. In Virginia, under the law, vehicles can park on the side of the road, on the right-hand side of the road, and then safely transact whatever business they would like to do with someone on the side of the road. They can't park in the left-hand turn lane next to a median. To do so, to stop and interact and transact business with the person in the median  Everywhere? Everywhere in the county? Yes, Your Honor. The testimony in this case from the Chief of Police, which has again gone unrebutted, is that this presents a traffic flow and safety problem on any median in the county, not just the busiest intersections where, to be sure, it would be particularly dangerous and also disruptive, but also in these, quote, quiet back roads where it's pure speculation to assume any solicitor is actually going to occupy it, but nevertheless, imagine the surprise of an individual coming home on that quiet back road and seeing someone flagging him down in the middle of the road to hand him a buck. It's just not common. It's definitely not safe. And the reason it's not safe is both supported by the case on the testimony, but also by common sense. If you're in the median and someone were to come barreling towards you, where are you going to go? If you're in the crosswalk crossing the street with the green light and somebody comes barreling along, I'm having real difficulty. Yes, Your Honor, there are many dangerous activities that go on the roadway, but that doesn't mean public safety officials should give up and not try to find a sensible regulation which balances the rights of the people. No, it has to be a constitutional regulation. Yes, Your Honor, absolutely. It could actually be. It could lack sensibility. It could be irrational as long as it's not unconstitutional. Well, here we're, of course, beyond a rational basis justification. The county does have to meet intermediate scrutiny, which it has done in the balance it struck here. What about the commissioner voted wrongly on Proposition X? A guy standing out there every day from the beginning of morning rush hour until the end of evening rush hour. He's really dedicated in his protest activities. This ordinance doesn't get him off the median, right? No, it does not, Your Honor. And because it doesn't have that same traffic disruption problem that asking a vehicle to stop and interact... That's true, Your Honor. That could be construed and perhaps could be proved to be a solicitation of support, which by the plain language of the ordinance could be covered. But just because it wouldn't further the county's interest in literally every case that we can imagine, and we can imagine quite a many hypotheticals, I can assure you, just because it doesn't support it in every situation doesn't mean it's not nearly tailored. You have to look under the law at the ordinance's general effect and the actual problem the county was encountering, which in this case was solicitation like Mr. Reynolds... Well, see, that's the problem. What is the problem? If the problem is people calling the sheriff to complain about people soliciting money, that's not a problem that the county can solve by prohibiting people from soliciting money, right? You agree with that? Certainly, Your Honor. That's a fair notion to be sure. So how far or how close are we to that's what's going on here? We're somewhat far away from that, Your Honor. Because when you look at the evidence, of course, Chief Middleton, he doesn't rely solely on citizen complaints, but there's nothing to suggest that citizen complaints can't be considered. He sees these activities as inherently unsafe. Inherently unsafe? Yes, Your Honor, and if we look at the case law, if we look at cases such as the Baton Rouge case out of the Fifth Circuit or Thayer very recently out of the First Circuit or Ormis out of the Seventh Circuit or the United States Supreme Court decisions in Coquinda and Heffron, it is pretty well held that solicitation is inherently disruptive of traffic flow. And in particular, in the Three Circuit Court cases I've just cited, it's also dangerous when conducted in the medians and cannot be made safe. In fact, if you look at the Baton Rouge case, that was also a parish-wide, county-wide restriction. It applied to every... When you look at the cases cited by the appellant to suggest that this ordinance is overbroad, they apply to sidewalks, they apply to the side of the road, they effectively close the forum. Bernardo Beach was that type of case. Exactly, Your Honor. In that case, the day laborers who wanted an opportunity to reach motor vehicle occupants literally couldn't because the sidewalks and the side of the road were also prohibited. And the concurrence in that case says, well, if you had left even one place for these individuals to reach their audience, perhaps this could have been considered narrowly tailored. And, in fact, if you look at the majority's analysis, the hypotheticals they pose, everyone is on the sidewalk. Girl scouts selling cookies in front of their high school, a lemonade stand on the side of the quiet road. None of these activities would be prohibited by Henrico County's ordinance, but were swept up in the Redondo Beach restriction. Of course it wasn't narrowly tailored. And if we look at the New Orleans case that counsel just cited too, that, yeah, maybe it didn't apply to the sidewalks, but it applied to pedestrian-to-pedestrian communications. On closed streets during Mardi Gras in New Orleans, that has nothing to do with traffic safety or traffic flow. So, of course, it was not narrowly tailored to address that problem. Here in the County of Henrico, the Chief Middleton, a public servant of 40 years, looked at the conditions he saw on the streets, the growth of the activity. Do you think you can win this case by citing the fact that he's been a law enforcement officer for 40 years? It certainly helps, Your Honor. Who else knows the county roads better than the Chief of Police? A lot of people would say the Chief of Police sits in his office and behaves like a chief. I would think a patrol officer knows the roads much better than the Chief of Police. Well, Your Honor, of course, he wasn't always the Chief of Police. He's gone up through the ranks and has been in the county, not a police officer for 40 years, but a Henrico County police officer for 40 years. And part of their job as police officers, of course, is to track accident statistics. How many accidents do we know of in this record? How many people standing in medians have been killed or maimed or injured? How many automobile accidents have they caused over the last, let's say, three years? We know of none specifically, Your Honor, that I've incurred in Henrico County. You know of none specifically? You know of none? I know of none, Your Honor, and that's correct. But even the appellant would concede it would be grisly to require people to die first before you can take a common-sense safety measure and supported your citizenry. And that's exactly what's been done here. And there are accidents that occur in Henrico County. Of course, it's not specifically to solicitors, and we hope it never happens, but there are pedestrian fatalities every year, 6,000 accidents in 2012 alone. These are very real issues in Henrico County. Traffic safety is a big concern for the Chief of Police. And when he saw this occurring, he said, I need to do something. It's my duty. It's his duty to provide safe and open streets for the citizens of Henrico County. And now, of course, it's his duty to uphold it. Why wasn't the requirement that solicitors sit enough? How did the change from a prohibition on standing only to a prohibition on standing and sitting, what was the incremental or marginal increase in safety from that? Your Honor, allowing people to sit in the median and conduct these activities proved to not work. That amendment was made in 2000. So how many additional injuries or deaths occurred after there was a prohibition on standing that required the county to go forward and also prohibit sitting? None, Your Honor, that I'm aware of. But that looks only at the public safety concern. We shouldn't forget the traffic flow concern. If there are 100-plus people in the medians, as we have reports of in 2011 and 2012, soliciting from the medians, they're also stopping traffic. And that's also a substantial... I don't understand that argument at all. They only stop traffic if people choose to stop. That's right. That's right, Your Honor. But they're asking literally everyone who passes, please stop and give me money. That's the request. And if everyone honored that request, the effect would be akin to a tollbooth. Isn't that a violation of other traffic laws that you could utilize to enforce that prohibition? Hindering the movement of traffic? I'm not aware of a specific law, Your Honor. They keep referring, the appellants keep referring to a general obstruction law. Not aware of one on the books in Virginia. I don't think a motorist is allowed to stop in the middle of the road just to interact with somebody. That would seem to me a violation of some traffic ordinance. Perhaps it is, Your Honor. Why not enforce that? Well, Your Honor, you could wait, for instance, for these disruptions to occur and then go after the person who stopped. No, please. It's intended to be that ordinance, I guess. It's intended to be a deterrence and a couple of well-placed traffic citations and a campaign by the police, it would seem to me, would accomplish that very same purpose. And completely squash in the... By doing so, you would also stop solicitation of the medians because no one would stop and give money anymore. The light turns on red in this county, right? They certainly can, Your Honor. You ever been tooted at because you didn't make a right turn on red? You know, the law doesn't say you must make a right turn on red, right? Sometimes you wake up in the morning and you think, you know what, I'm not going to make any right turns on red today. I'm just going to sit there. And you get this... Isn't that what's going to happen if people stopped at the... If you put solicitors on the sidewalk, people won't make right turns on red. I'm right behind you, by the way. I've been on both sides of that, Your Honor. But it's true that you could see some disruption in traffic flow caused by people on the side of the road, some, to be sure. But also you would have a much safer situation than the person actually being in the median because, again, the substantial interest here is the combination of... My common sense tells me a driver's foot is more likely to slide off a brake pedal if the driver is reaching across the car to give a dollar to somebody standing on the sidewalk, right? Then it is if the driver, if he or she chooses to do so, rolls down the window and drops the coins in the hands of a person standing there. Again, I'm no expert. I don't claim any expertise. But you're relying here on an awful lot of common sense. We are all drivers. Most of us are. We all have the experience of encountering solicitors and people with signs and right turns on red and left turn on red from one way street to another one way. I mean, there's all kinds of things that happen out there. It just seems like this is both over-inclusive, under-inclusive, and unsupported by any real data or empirical evidence. The problem here is anything other than certain people in the county don't like being approached. No, Your Honor, absolutely not. The problem in this case had nothing to do with certain people not liking being approached. The evidence in this case in content neutrality isn't even in dispute here, it's conceded, was that this was purely a public safety concern. It was in no way an attack somehow to hide the face of poverty. In fact, a citizen at the public hearing came forward to the Board of Supervisors and respectfully requested that the ordinance be expanded to the side of the road and bus stops and sidewalks and all of this to prohibit this kind of pedestrian-to-pedestrian solicitation that occurs there, and the Board of Supervisors didn't go there. If they had truly intended to mask poverty in Henrico County, they would have taken that full measure, but that is not the intent. The intent here is the public safety concern, and Your Honor is correct. Common sense perhaps can lead you in one direction or the other, but here we also have the evidence of the Chief of Police. Whether, according to them, it's entitled to little weight, they put forward no evidence to rebut it. And on that record, the district court was absolutely correct to find that there's no genuine dispute of material fact and to grant summary judgment for the County of Henrico. Do you know why the judge didn't appoint an attorney for the plaintiff in this case? Maybe it was because he didn't ask for one. No, Your Honor. Mr. Reynolds, of course, did not ask for an attorney, but he was no slouch. Of course, he was pro se below, but he successfully defeated the county's motion to dismiss. He also noticed and took on his own accord the five depositions in this case. He put forward his evidence. It just didn't support his theories. He never put forward evidence of his own to rebut the case. He's not a lawyer. He's not a lawyer, Your Honor. He's a graduate of law school. He is not a graduate of law school. Yes, that's correct, Your Honor. But he built his record. And what would happen, let's say, if we did go back and put forward more evidence, is exactly what's been predicted. Each sire is an expensive bird who tells them exactly what we think they'll say. Is he going to be able to hire an expensive expert? Your Honor, I don't know. That's a good point, if he's going to afford to hire. Of course, he has counsel now on appeal. But that goes to the point, what evidence is he going to come forward? That's correct, Your Honor. I don't know where they've been appointed or who they represent or what their arrangement is, to be sure. I don't know. If we're to predict evidence will be presented below, it's going to be a competing expert situation. And if you look at the actual courts who have considered this, and when we look at the experience of other localities, it's okay for Henrico County to look at its sister jurisdictions and say this was a problem there. Here's the evidence they saw. Here's the problem they had. Someone died distributing newspapers. Is there a similar ordinance anywhere else in Virginia? Yes, Your Honor, I believe so. This isn't in the record, but I think this is a fairly common ordinance because it's actually derived from state code. Of course, in Virginia, we're a Dillon Rule state, and so we can only do things as a locality that the General Assembly allows us to do. And there's a state code, 46.2931, I believe, which gives every locality the authority to do exactly what Henrico's done. And so I believe these are actually fairly common, Your Honor. So Fairfax County, you can't stand in the median? I don't know if they have one or not, Your Honor, but they could under state law. Bellpepper County, you can't stand in the median? I don't know if they have one, Your Honor, but they could. Well, of course, that's not correct because you can stand in the median in every county. To be perfectly precise, Your Honor, there's nothing in this ordinance that simply says get out of the median, you can't be here. It's this transaction. Frankly, that's part of the problem because it undercuts your traffic safety rationale. Perhaps for traffic safety, if you could say that everyone in the median was a distraction and that was the sole justification for this ordinance, that point might carry some water. But that's not the case here because we're also looking at the disruption. What about aborted fetuses? Not to put too well of a point on it. We've had a number of, you know what I'm talking about, the photos that some of the pro-life movement people who occupy medians all over this country, would that be allowed under this ordinance? Yes, Your Honor. It would? What could be more distracting than a 6x8 photograph of an aborted fetus? Your Honor, it truly would be distracting, absolutely vile in my personal opinion, but not prohibited by the ordinance. What do you say about that? Although it would be distracting to be sure, it doesn't have that transactional element. It's not aborted fetus, please stop and give us money. It's simply message of this is our position. And that's a distinction that's been drawn in other contexts too. If you look at Heffron, the solicitation case in the state fair, that's the same distinction the United States Supreme Court made between solicitation and its inherent interaction and purely communicative oral advocacy. They're different beasts, so to speak. They're different kinds of solicitations. What if they had a phone number assigned with a phone number? Would that be prohibited or not? In other words, a pro-life demonstration, including large photographs of aborted fetuses, other images, and a phone number in very large block letters. Would that be prohibited or allowed under this ordinance? A close case to be sure, Your Honor. But if they're asking for a call and a donation. But what are they doing if they have a phone number? Yeah, it's pretty common sense. So that would be prohibited. Well, it could be and an officer could bring it. But if the phone number were on the same placard as the aborted fetus? Yes, Your Honor. And the implication being that they're requesting support or they're requesting a phone call, they're requesting a donation of some sort. I thought you were requesting the call right then and there. I thought your concern was the stopping of the vehicle in the median. Well, certainly, Your Honor. And the majority of the cases, if we look at the general effect of the ordinance and the problem the county was addressing, that's exactly the concerns. But if we look at this particular close case, I would call it, it, of course, would be dangerous to pull out your phone right then and there and call. I think everyone would agree. Not if you're sitting in the passenger seat. Well, true, Your Honor. That's a good point. If you were sitting in the passenger seat, that would surely be less dangerous. But, again, if we just look at these particular cases and say the county's interest is advanced in this individual case, you have to look instead at the general effect. We can imagine close cases. No, no. I'm not sure you look at the general effect. I mean, the question is whether or not it's narrowly tailored. You know, what speech are you excluding? How broad is it sweeping? Yes, Your Honor. And so all of these hypotheticals, and I know you expected all of them, but what they're showing is that this sweep of the statute is pretty broad. But the overbreath, Your Honor, must be substantial in relation to the plainly legitimate sweep. And because we can imagine these close cases, we can imagine them under every scenario. You have to have a factual basis. True, to be sure, Your Honor. And one of the things the Supreme Court said, particularly in McMullen, is, you know, it's just not enough when you start restricting speech in a traditional public forum to just have somebody come in and say this is a good idea, this is not a good idea, that there's got to be a lot more. I'm not saying it can't be done. Of course not. But I'm saying just putting one police officer up, when you start trying to restrict speech in a traditional public forum, the Supreme Court has said look very closely at what the evidence is of governance. And it's not just the police officer's testimony in this case, but also the other cases that have the exact same kind of regulation to be valid. In McMullen, that was a very rare ordinance. No one else in the country had done anything like that. The Supreme Court specifically noted that. And, of course, in that case, the ordinance was enacted as a police officer expedient because it was administratively difficult to enforce alternatives, not because there was a real substantial interest at stake that they were advancing, Your Honor. Thank you very much. Let me ask you one other question. Does this ordinance restrict speech that would require no interaction between the driver and the speaker? Conceivably, Your Honor, yes it could. But that wasn't why it was enacted, and that wasn't what the county was observing when it enacted it. Thank you, Your Honor. Thank you. I want to start by addressing Judge Davis's question about how common these sort of ordinances are. We haven't comprehensively reviewed all ordinances in Virginia, but we'd note, for example, that Chesterfield County, a neighboring county to Henrico that is a substantially similar size, does not have such an ordinance. It just enforces its traffic obstruction laws. Your Honor mentioned Fairfax County. Our understanding of that ordinance is that it does not apply to the medians. It only applies to solicitation and similar type conduct actually in the roadway itself. And that sort of goes to the two primary points I'd like to make here, and they're related. It's that the government under intermediates' need bears the burden of proof, and that this case was decided on summary judgment where all inferences must be construed in favor of Mr. Reynolds. The court made clear in McCullen that even with a content-neutral law, intermediate scrutiny is a rigorous standard. It's not sufficient for the government to simply point to reasons. It needs to point to evidence. And in addition, when there are multiple less restrictive alternatives that would serve the government's objective equally well, the government can't go ahead and just broadly restrict speech. The First Amendment and First Amendment scrutiny isn't simply about preventing government censorship. It's also about preventing the government from undervaluing speech and taking shortcuts because they might have incentives to privilege other interests. It ensures requiring real scrutiny ensures that the government will have evidence, that they don't simply take action that might negatively affect the least popular amongst. And, you know, to go to the question of whether this is, yes. Burgess, is your position that this case should go back for a trial, or that as a matter of law this ordinance just doesn't cut it under the First Amendment? It's our position that as a matter of law, given the government's burden and given that they have not come forward with anything besides conjecture that they label as common sense and conclusory assertions by a single police officer that this seemed dangerous, that we're entitled to judgment. We do think at a minimum that to the extent the court thinks that there are relevant disputed questions about traffic safety conditions, about the nature of the medians, we think at a fair minimum we would be entitled to a remand. But we do think it's significant that it is the county's burden in this case. And to just come forward with evidence that, well, I've observed things and it seems dangerous to me, cannot be sufficient to sustain the government's burden of proof under intermediate scrutiny. If the court has no further questions, we would ask that it reverse the judgment of the district court. All right. Thank you.
judges: William B. Traxler, Jr., Albert Diaz, Andre M. Davis